[See Case No. 14,260.]

## Case No. 14,260.

TURNER et al. v. INDIANAPOLIS, B. & W. RY. CO. et al.

[8 Biss. 527; 8 Reporter, 453; 4 Cin. Law Bul. 569; 11 Chi. Leg. News. 375.] [1]

Circuit Court, D. Indiana. May 23, 1879.

RAILROADS — JUDGMENT AGAINST RECEIVER — APPEAL BOND.

1. A receiver of a railroad appointed in foreclosure proceedings is the agent of the bondholders and the trustees, and a judgment rendered against him by a court of competent jurisdiction, is binding upon the interests of the bondholders.

2. A receiver is liable for damage to engines rented by him, arising from omission to make necessary repairs.

3. Where a party by appealing ties up a fund in court, the bond should provide for payment of interest during the pendency of the appeal.

[See Calhoun v. St. Louis & S. E. Ry. Co., 14 Fed. 11.]

[This was a proceeding by Malcolm C. Turner and others against the Indianapolis, Bloomington & Western Railway Company and others. See Cases Nos. 14,258 and 14,259.]

John M. Butler, for petitioner.
J. D. Campbell, for bondholders.

DRUMMOND, Circuit Judge. The main line of the Indianapolis, Bloomington & Western Railway was sold, and a large sum of money has been paid into court, and this is an application made by the Rogers Locomotive & Machine Works for the payment of a portion of that sum, and the question is whether the court ought to allow the claim.

The facts of the case which give rise to this question seem to be substantially these: There was a bill in equity pending in the state court, growing out of the floating indebtedness of the railway company, and a cross-bill was filed by the Farmers' Loan & Trust Company as the mortgage trustee of a large indebtedness due from the company on the bonds and coupons. At the time this suit was pending in the state court, application was made to the court, by the receiver appointed in that court, setting forth that there was a controversy between the Rogers Locomotive & Machine Works and himself, in relation to a claim of the former against him, as receiver, and the court directed a suit to be brought in the state court to settle it, and an action of replevin was accordingly brought. It consisted of two branches: one was as to the right of the Rogers Locomotive & Machine Works to the possession of certain locomotives which were in possession of the railway company; and the other was in relation to the claim for damages, and rental for their use during a certain time.

It is important to consider the aspect of the case as it existed at that time. There was a

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 8 Reporter. 453. and 4 Cin. Law Bul. 569, contain only partial reports.]

bill in chancery pending in the state court, with a cross-bill, to foreclose the deed of trust and sell the property to meet the indebtedness of the company due upon the bonds. There was a suit pending in the state court authorized to be brought by the Rogers Locomotive & Machine Works against the receiver, for the purpose of settling the controversy between him and that company. This being the status of the two cases, they were both removed to the federal court, the replevin case in the first instance, and afterwards the chancery suit. Having both come into the federal court, they were subject to all the rights which had been acquired by the parties respectively in the state court, and consequently, unless changed or modified by the order of the federal court, the action of replevin in the circuit court of the United States, was subject to the order which had been made by the state court authorizing the suit to be brought there, and the case in chancery was also subject to the order which had been made in the state court in relation to the replevin suit. Therefore, we cannot disconnect the two suits, in considering the question which arises in this case. There were two cases, but the suit at law grew out of the suit in chancery, and was in some respects auxiliary to it, so that when it came into the federal court it was, as in the state court, connected with the case in chancery, and when the order was made by consent in the federal court to refer it to the master in chancery, it must be considered as a part of it. When the property was removed from the state to the federal court, the receiver of the state court exercised the same control over it as in the state court, and he was recognized by the federal court as the receiver of the property, and became its receiver; and I cannot doubt that the federal court had the right to make the order which was made, and that this order was binding on the equities and legal rights of all parties in relation to the subject-matter of controversy in the replevin suit. Undoubtedly the court had jurisdiction of the case, and had the right to pass upon and settle the controversy, and to adopt this mode of settlement with the consent of all parties. The receiver represented all parties, the trustee, and all claimants who had claims upon the property, and was the receiver for the interest of all. That being so, what was the legal consequence growing out of the settlement of the controversy between the Rogers Locomotive & Machine Works and the receiver, by the circuit court of the United States? When this matter was referred to the master, and he made his report, and the court entered judgment, it bound all parties. It bound the parties connected with the chancery suit in the same manner, it seems to me, as it bound the parties in the suit at law, because, as I have said, this latter was an emanation of the chancery suit. Perhaps the chancellor might have control over the suit analogous to that

which he would have if an issue out of chancery had been directed by the court; if not for all purposes and to every extent, certainly to some extent; but there has never been any interference by the court in the chancery suit with the replevin suit. I agree, however, that it can be only binding in relation to all matters that were legitimately before the court in the replevin suit, and which were properly settled by the judgment in that suit, and consequently, the question is. whether the controversy was of such a character as to be binding, as to the point in question, upon the bondholders and the trustee, and I cannot see why it is not. The rental was a claim against the receiver, as such, for the use of certain locomotives during the time he was using them in the operation of the road, and constitutes a just claim against him, and against the court which was operating the road. Why, then, is not the receiver and the court bound for the amount which was found by the court in the replevin suit for the use and rental of the locomotives during the time mentioned? I know of no good reason. It was certainly just as much a part of the operating expenses of the road as labor or material and supplies, and there being a controversy as to what should be the amount paid for the rental, submitted and determined as stated, it seems to me that the decision of the court and its judgment must, at present, be considered final and conclusive on the subject.

Then, as to the other question, whether the receiver is liable, and whether the damage sustained in the use of the engines by him constitutes a just charge as for the operation of the road. Perhaps that part of the case is not so clear as the other, but still I think in principle it is not distinguishable. The locomotives were used by the receiver in the operation of the road, and the rental is part of the expenditure for the use of the various engines. Compensation is claimed because in the use there has been an omission to make the proper and necessary repairs. Now, the use of the locomotives constitutes one claim, and for that just compensation should be paid. If there has been any act omitted to be done, which the receiver ought to have done, namely, if he has omitted making the necessary repairs, then that would seem to constitute another and as just a claim against the receiver as for the use of the locomotives. It would necessarily be an important element in the value of the engines to the Rogers Locomotive & Machine Works and I think that it is reasonable, and that the receiver should be held accountable as an officer of the court, and for which the income of the road and proceeds of the property should be liable. It is difficult to discriminate between a claim of this kind and one for supplies and materials, or labor, or for the rental of "rolling stock," such as locomotives and cars. The counsel insists that it is simply a non-compliance with a contract on the part of the receiver. Whether

there was a wrongful act by the receiver does not, perhaps clearly appear; but suppose it were so, and that the receiver, by his own wrong, as by negligence, omitted to make the necessary repairs, and take the proper care of the locomotives in operating the road, ought he not to be liable?

I am aware that the case of Davenport v. Alabama & C. R. Co. [Case No. 3,588] seems to go the length of holding, if I understand it, that neither the receiver nor the property in possession of the court is liable for the negligence of the receiver, or that of his employés. The view that has been taken in this circuit has been somewhat different. We have often held that the receiver is liable for the negligence of his employés, and we have required him to pay out of the income of the road the damages which parties have sustained by his negligence, or that of his employés. The operation of a railroad by a court through a receiver is something out of the routine duty of courts and receivers. There must be exceptional rules applicable to such receivers. The receiver holds the property for preservation, and it may be questionable whether the receiver should be himself personally responsible in damages for the negligence of his employés, and whether public policy does not require that the receiver, as the organ of the court merely, should be answerable under his contract as operator of the road. The rules upon this subject have not been very clearly and satisfactorily settled, and therefore we should proceed with some caution in cases of this kind; but I feel no hesitation in holding in this case, the fact being that the receiver did not make the necessary and proper repairs of these engines, and having suffered them to be damaged and injured, that he ought to make compensation, and therefore I shall allow that claim as well as the other. The money is in court, to which this applicant has a just claim, and whether or not this judgment is valid is a question we must consider, on this application, as settled.

It is true an appeal has been taken to the supreme court of the United States from this judgment. It may be reversed, but until reversed we must regard it as a binding judgment. It was competent for the parties affected to supersede it by giving the necessary bond. They have not chosen to do so, but have only filed, as I understand, the ordinary bond for costs. Therefore, the judgment is left in full force, and we have to treat it as res adjudicata in this court. There is a way, perhaps, in which these parties can avail themselves of any error, either in the order which the court will now make, or in rendering judgment in the replevin suit, and that is by appealing from the order of this court, and giving the necessary security.

The fund is in court, and cannot be taken out except by its order; and in requiring a supersedeas bond, of course the court would take into consideration the fact that the fund

was here subject to the order of the court at any time whenever, if the case should go to the supreme court, the rights and equities of the parties are determined; and if this order should be affirmed, then the money in court, with any security that may be given, would meet the claim which the Rogers Locomotive & Machine Works may have, so that I shall direct the money to be paid over, and if the other party desires to appeal from the order which I make, of course it can do so, upon giving the necessary security, which would have to be enough to cover interest during the time the case might be pending in the supreme court, costs and other incidental expenses and damages.